**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLINT WALKER,<br><br>             Plaintiff,<br><br>     v.<br><br>GREG BARTOWSKI, et al.,<br><br>             Defendants. | Civil Action No. 11-0400 (ES)<br><br><br>**OPINION** |

**Salas, District Judge**

Petitioner Clint Walker ("Petitioner") filed a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a), challenging a judgment of conviction entered by the Superior Court of New Jersey against him for his role in a robbery.   Petitioner brings a host of challenges relating to his trial, sentencing, and direct appeal.   While Petitioner focuses on conflicting identification statements by the victim of the robbery, and attempts to point to constitutional error by the New Jersey courts, all of his claims are without merit.   For the reasons detailed below, the Petition will be denied, and no certificate of appealability will issue.   Petitioner's application for appointment of pro bono counsel will be denied as moot.

## I.     BACKGROUND

Although the facts relating to Petitioner's conviction are straightforward, the procedural history of his state court proceedings is convoluted.   Moreover, Petitioner raised his claims before the state courts in a piecemeal fashion.   Accordingly, to provide the reader with a clear understanding of the pertinent aspects of Petitioner's case, this Court presents the background in

four sections.   First, the Court recounts the pre-trial investigation and arrest of Petitioner and his co-defendant Kenneth Grady.   Second, the Court discusses the jury trial before the Superior Court of New Jersey, Law Division, Essex County ("trial court"), at which both defendants were convicted.   Third, the Court recounts the substance of Petitioner's direct appeal of his conviction to the New Jersey Appellate Division.   And, finally, the Court addresses Petitioner's post-conviction relief ("PCR") proceedings before the trial court ("trial-level PCR court") and the Appellate Division.

### A.       Pre-Trial Investigation and Arrest

On January 12, 2003, sixty-nine year-old Allen Cobb was robbed by two men as he loaded groceries into his van outside a supermarket in West Orange, New Jersey.   *State v. Walker*, 2006 WL 1418632, at *1 (N.J. Super. Ct. App. Div. May 25, 2006) (D.E. No. 22-8). The two men were subsequently identified as Petitioner and his co-defendant Kenneth Grady. *Id*.   Cobb testified that the two men approached him, one on each side.   *Id*.   Importantly, Cobb noticed that the men played different roles in the robbery.   *Id*.   The man on Cobb's left checked Cobb's pockets, taking his car keys and wallet.   *Id*.   The wallet contained approximately $120 cash, Cobb's credit cards, and his identification.   *Id*.   Unlike the man on Cobb's left, the man on Cobb's right "jacked" a sawed-off shotgun that was protruding from under the assailant's coat.   *Id*.   After Cobb told both men that he had no more money, they drove away with his wallet and keys in a gray car, license plate number KGJ89P.   *Id*.

Once the two men drove off, Cobb called the police from inside the supermarket.   *Id*. Officer Michael Mastras was the first to arrive on the scene—within three minutes of Cobb's call.   Armed with the get-a-way vehicle's license plate number, Officer Mastras "alert[ed] all

units to keep an eye out for the vehicle." *Id.* (alteration in original).   Mastras also discovered that the license plate was from an older Nissan Stanza, last registered to Crystal D. Braxton in May of 2001.   *Id.*

Meanwhile, Cobb gave a sworn statement to Detective Joseph Spero ("Detective Spero" or "Spero") at the police headquarters.   *Id.* at *2.   In his statement, Cobb described both men as black males in their twenties—one with "crazy looking hair and the other guy [ ]as a lighter skinned male with a mustache."   *Id.*   Although Cobb was shown two books containing numerous photographs, he did not make a positive identification at that time.   *Id.*

On the same day that he took Cobb's statement, Detective Spero spoke to Crystal Braxton about the Nissan Stanza.   *Id.*   Braxton stated that she was no longer in possession of the plates or the car.   *Id.*   According to Braxton, while she originally used the plates on the car, she abandoned the car (and plates) in 2000 when the car became disabled.   *Id.*

Shortly thereafter, Cobb informed Spero that $260 had been withdrawn from Cobb's bank account with the stolen ATM card.   *Id.*   The ATM machine was at Newark Penn Station. *Id.*

Several days later, Detective Spero learned that Petitioner shared an address with Crystal Braxton, and that Petitioner's co-defendant Grady, lived in East Orange or Orange, New Jersey. *Id.*   This discovery led Detective Spero to speak with Braxton a second time.   *Id.*   This time, Braxton stated that Petitioner was her fiancée and that he had been living with her.   *Id.*   In addition, Braxton told Spero that Petitioner was with her in 2000, when her vehicle became disabled.   *Id.*   Presented with a photograph of Grady, Braxton also identified Grady as one of Petitioner's friends that she knew.   *Id.*   She signed and dated the back of the photograph.   *Id.*

Spero then called Cobb to the police station for a photo array including Petitioner and Grady's photographs. *Id*. Detective Matthew Palardy of a neighboring police department showed Cobb two photo line-ups, featuring six-person photo arrays.[1]  *Id*.  Viewing the first photo array, Cobb identified Petitioner as one of the assailants and signed the back of Petitioner's photograph. *Id*. Cobb stated, "that's the guy who pointed the gun at me." *Id*.  In the second photo array, Cobb identified Grady as "the guy who went through my pockets or took my money." *Id*. Cobb signed the back of Grady's photograph, as he did with the photograph of Petitioner. *Id*.

Thereafter, Detective Palardy informed Spero of the results of the photo arrays. *Id*. Based upon Cobb's identifications, Spero obtained two arrest warrants—one for Petitioner, and one for Grady. *Id*.  Both were arrested on January 23, 2003. *Id*.

**B.     The Trial**

Petitioner was tried before a jury on robbery, conspiracy, and gun possession charges, along with Grady as his co-defendant. *Id*. at *1.   At the trial, issues arose with respect to Cobb's identification of the assailants. *See id*. at *3.   When asked to identify both assailants in court, Cobb stated that he was only "reasonably sure" that Petitioner and Grady were the two men that robbed him. *Id*.  He indicated that he believed that they were the assailants, but explained that they looked different than they had at the time of the robbery. *See id*.  Cobb noted that "the hair is different on both men" and "[o]ne man probably looks like he gained a little weight." *Id*.

---

[1]      "Spero was not allowed to show the victim any photographs because he was involved in the investigation." *Id*.

4

Notably, when Cobb was directed to the pictures from the photo array that he had signed, his testimony contradicted his prior statements to the police.  *See id.*  While he previously identified Petitioner as the assailant in the first photo array photograph, when presented with that same photograph in court, Cobb indicated that the photograph depicted Grady instead.  *See id.* He, similarly, contradicted his prior statement regarding the second photograph, stating in court that it depicted Petitioner rather than Grady.  *See id.*  The natural consequence of Cobb's interchanging of the two defendants' photographs was that Cobb's trial testimony contradicted his prior statement regarding each defendant's respective role in the robbery.  *See id.*  So, according to Cobb's trial testimony, Grady was the one who held the sawed-off shotgun—not Petitioner.[2]  *See id.*

Ultimately, the jury found Petitioner guilty of:  first-degree robbery, third-degree unlawful possession of a weapon (sawed-off shotgun), second-degree possession of a weapon for an unlawful purpose, third-degree knowingly possessing a prohibited weapon, and second-degree possession of a weapon by a convicted felon.  *Id.* at *1.  He was acquitted of second-degree conspiracy to commit robbery.  *Id.*  The trial court sentenced Petitioner to fifty-years imprisonment with a requirement that he serve a minimum of 85% of his sentence per the No Early Release Act ("NERA"), N.J.S.A. 2C:43–7.2.  *See id.*

C.     **Direct Appeal**

Petitioner appealed to the Appellate Division.  In his direct appeal, Petitioner raised seven points.  *Id.*  His points encompass challenges to the trial court's jury instructions, several

---

[2]     Cobb's testimony contradicted other prior statements made to the police, such as which co-defendant spoke to him first on the morning of the robbery.  *See id.*  Because these contradictions do not alter the Court's analysis, they are not recounted here.

of the court's rulings relating to his conviction, including an ineffective assistance of counsel claim, as well as challenges to his sentence.   The Court addresses each category of challenges in turn.

### 1.        Jury Instruction Challenges

Petitioner's first three points involved challenges to the trial court's jury instructions. *See Walker*, 2006 WL 1418632, at *3.   First, he argued that the trial court failed to instruct the jury on two lesser-included offenses:   the offense of theft and the offense of aggravated assault. *Id.* (Point I).   Second, Petitioner argued that the trial court failed to instruct the jury on the law of prior inconsistent statements.   *Id.* (Point II).   Third, Petitioner argued that the trial court's jury instruction "that defendant was the actor"[3] was in error.   *Id.* (Point III).

The Appellate Division began its analysis of Petitioner's jury instruction challenges by first noting that Petitioner had not raised any of these challenges to the trial court.   *Id.* at *4. Because Petitioner had not requested the lesser-included charges, the Appellate Division noted, the trial court was not required to instruct on those charges unless "the facts adduced at trial clearly indicate[d] that a jury could convict on the lesser while acquitting on the greater offense." *Id.* (*citing State v. Jenkins*, 840 A.2d 242 (2004); *State v. Garron*, 827 A.2d 243 (2003), *cert. denied*, 540 U.S. 1160 (2004)).   "Thus," the Appellate Division continued,

> where the facts do not clearly raise the issue, and there is no request, there is no error in the failure to charge on the lesser offense.   In such instances, a court need not sift through the record meticulously to find the few fragments which might suggest that a charge should be given.

*Id.*

---

[3]    In the Appellate Division's decision the quoted language is in all uppercase letters.   For readability purposes, this Court uses standard capitalization throughout the opinion instead.

After summarizing the trial court record, the Appellate Division concluded that the trial court properly declined to charge the lesser-included offenses of theft and aggravated assault because there was insufficient evidence to support those charges. *Id.* at *5. With respect to the prior inconsistent statements, the Appellate Division concluded that the trial court's instructions on witness credibility and identification sufficiently instructed the jury "to focus on the victim's [(Cobb's)] varying accounts." *Id.* at *8. Applying the plain error standard of review, the Appellate Division reasoned that Petitioner was, therefore, not deprived of a fair trial on account of the trial court's failure to instruct the jury on the law of prior inconsistent statements. *See id.*

Regarding Petitioner's contention that the trial court instructed the jury that Petitioner was "the actor," the Appellate Division construed this challenge as asserting that the trial court "directed a verdict on an element of the charge of unlawful possession of a sawed-off shotgun." *Id.* The Appellate Division rejected this challenge as "without sufficient merit to warrant discussion in a written opinion." *Id.* (citing N.J. Ct. R. 2:11-3(e)(2)).

### 2.    Other Conviction-Related Challenges

In addition to the jury instruction challenges, Petitioner raised several other points on direct appeal. *See id.* at *3. He argued that his trial counsel had an impermissible conflict of interest, and that his counsel's representation violated the Sixth Amendment. *Id.* (Point IV). Next, Petitioner argued that the trial court should have suppressed the identification evidence because it was unreliable, and that admission of the evidence violated his Fourteenth Amendment rights. *Id.* (Point V). Petitioner then raised a cumulative effect argument, contending that his Fourteenth Amendment rights were violated by "the accumulation of trial

7

errors." *Id.* (Point VI).   The Appellate Division summarily rejected each of these challenges, noting that these challenges were "without sufficient merit to warrant discussion in a written opinion." *Id.* at *8 (citing N.J. Ct. R. 2:11-3(e)(2)).

### 3.   Sentencing Challenges

Petitioner, further, challenged his sentence.   *See id.* at * 4.   He argued that his sentence was excessive, and that the trial court did not properly balance aggravating factors.   *Id.* (Point VII).   He argued that he should be resentenced "because he was sentenced on the basis of an unconstitutional sentencing scheme." *Id.*   Lastly, Petitioner contended that the 85% parole ineligibility imposed by the trial court violated his Eighth Amendment right to be free from cruel and unusual punishment.   *Id.*

The Appellate Division focused its discussion of Petitioner's sentencing challenges on New Jersey's Graves Act, N.J.S.A. 2C:43-7a —New Jersey's enhanced sentencing law—and the No Early Release Act.   *Id.* at *8-9.   The Appellate Division explained that, by operation of these statutes, Petitioner was subjected to a presumptive fifty-year term of imprisonment, and that this term carries a parole ineligibility of 85%.   *Id.* at *9.   Because the trial court's sentence comported with the state statutory scheme, the Appellate Division reasoned, there was no constitutional error.   *Id.*

Dissatisfied with the Appellate Division's May 25, 2006 ruling, which rejected each of his claims, Petitioner filed a petition for certification with the New Jersey Supreme Court, on June 14, 2006.   *See State v. Walker*, Crim. Indictment No. 02-04-1194, slip op. at 3 (Oct. 13, 2005) (D.E. No. 22-15) ("*Walker Trial PCR Decision*").   That petition was denied on September 6, 2006.   *Id.*

### D.      PCR Proceeding – Trial Level

The month following the New Jersey Supreme Court's denial of certification on October 13, 2006, Petitioner filed a *pro se* petition for post-conviction relief with the trial court.   *See id.*  In his petition, he challenged the effectiveness of his counsel and contended that he did not receive a fair trial.   *See id.* at 3.   He delineated eleven points revolving around these two broad issues.[4]   *Id.*

Regarding ineffective assistance of his trial counsel, Petitioner generally contended that his counsel was ineffective "at the pre-trial stage" and "at the trial stage."   *Id.* ("POINT TWO" through "POINT FOUR").   He further argued that his trial counsel was ineffective in several specific ways.   *See id.* at 3-4.   First, Petitioner argued that his counsel failed to request a jury charge on the lesser-included offenses of armed robbery, aggravated assault, and prior inconsistent statements.   *Id.* at 4 ("POINT FIVE" through "POINT SEVEN").   Next, he argued that his counsel failed to object "to the trial court's instruction to the jury that directed the jury to find that the defendant was the actor."   *Id.* ("POINT EIGHT").   In addition, Petitioner challenged his trial counsel's failure to either request an alibi instruction or object to the trial court's decision not to give that instruction.   *Id.* ("POINT NINE").   Combining these challenges together, Petitioner then argued that the accumulation of errors by his trial counsel denied him due process of law.   *Id.* ("POINT TEN").   Finally, Petitioner argued that his appellate counsel was ineffective for failing to challenge the trial court's alibi jury instruction on appeal.   *Id.* ("POINT ELEVEN").

---

[4]      Perplexingly, Petitioner included the following as his first point:   "The matter herein is properly presented the [sic] court by way of a petitioner for post conviction relief."   *Id.* ("POINT ONE").   Because this point does not state a substantive challenge, the Court will not address it further in this opinion.

Turning to his fair trial challenges, Petitioner raised two challenges—that the trial court failed to instruct the jury on alibi, *id.* at 4 ("POINT NINE"), and that the prosecutor engaged in misconduct, *id.* ("POINT TWELVE").

In February 2008, after the *pro se* petition was filed, the trial-level PCR court received briefing on Petitioner's ineffective assistance and fair trial challenges from PCR counsel.   *See State v. Walker*, No. A-0079-08T4, slip op. at 3 (N.J. Sup. Ct. App. Div. July 12, 2010) (D.E. No. 22-19) ("*Walker Appellate PCR Decision*").   Thereafter, in June 2008, the PCR court held oral argument, and denied the petition on the record.   *Id.*   The court then issued a written decision.   *Id.*

Separately, and thoroughly, discussing each claim, the court denied Petitioner's requests for relief on the merits.[5]   *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 3. For example, in addressing Petitioner's challenge to his counsel's decision not to request an alibi instruction, the court detailed the pertinent facts and held that trial counsel's decision not to request an alibi instruction was "a carefully considered strategic decision, which courts generally consider unchallengeable."   *Id.*   The court's ruling on this claim (and the others) applied the well-recognized *Strickland*[6] framework.   *See id.* at 8-14.   The trial-level PCR court further held that the appellate counsel's decision not to challenge, on appeal, the lack of an alibi instruction was also a strategic choice that did not prejudice Petitioner.[7]   *Id.* at 13-14.

---

[5]   Even where the PCR court noted that a claim was procedurally defaulted because it had already been raised on appeal, the court nonetheless ruled on the merits of the claim.   *See, e.g., id.* at 9 (discussing POINT V); *id.* at 11 (discussing POINT VI).

[6]   *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

[7]   Further detail regarding the PCR court's analysis is included, where relevant, in the discussion section of this opinion.

10

Additionally, the trial-level PCR court held that Petitioner's attempt to re-litigate the Appellate Court's jury instruction ruling on direct appeal was procedurally barred under state law.   *See id.* at 6.   On the prosecutorial misconduct claim, the PCR court rejected Petitioner's factual contention that the prosecutor "knowingly allowed false testimony and statements to be presented" as unsupported by the trial record.   *Id.* at 14.   In fact, the court found all of Petitioner's prosecutorial misconduct challenges unsupported by the record, "misleading[,] and verifiably inaccurate."[8]   *Id.*

### E.    PCR Proceeding – Appellate Level

Following denial of his PCR petition at the trial level, Petitioner appealed to the Appellate Division.   *Walker Appellate PCR Decision*, No. A-0079-08T4, slip op. at 7.   As with his prior challenges, Petitioner again raised issues that had already been litigated.   *See id.* at 6-7.   He argued, first, that his trial counsel failed to request jury charges on prior inconsistent statements, and the lesser-included offense of theft.   *Id.*   Petitioner further argued that his trial counsel did not conduct a meaningful investigation.[9]   *Id.* at 7.   New to this appeal, Petitioner argued in a *pro se* supplemental brief that his PCR counsel was ineffective for neglecting to "address the cross-racial jury instruction regarding identification submitted by the trial court" and "that [Petitioner] was not granted a proper *Wade* hearing."[10]   *Id.*

---

[8]    The copy of the PCR court decision provided to the Court stops at the bottom of page 14. *See id.*   This Court is not concerned that any salient portions are missing from the Court's copy because this copy appears to contain all of the PCR court's analysis, and neither Petitioner nor Respondent has relied upon pages of the decision beyond page 14.

[9]    Petitioner also argued that his claims were not, as the PCR court held, procedurally barred under state law, and Petitioner incorporated all of his previously asserted claims into the PCR appeal.   *Id.*

[10]   *United States v. Wade*, 388 U.S. 218 (1967).

In a decision issued on July 12, 2010, the Appellate Division affirmed the trial-level PCR court's denial of the PCR petition for substantially the same reasons set forth in the lower court's written decision.   *Id.* at 10.   As for Petitioner's *pro se* challenge to the effectiveness of his PCR counsel, the Appellate Division rejected the cross-racial identification challenge as unsupported by the record.   *Id.* at 12.   Contrary to Petitioner's assertion, the Appellate Division noted that such a charge was instructed.   *Id.*   The Appellate Division also denied the *Wade* hearing challenge, noting that this challenge had "no merit[.]"   *Id.*

## II.      STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 110 Stat. 1214, a federal court may grant habeas relief where the petitioner's state custody "is . . . in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a). Under the "highly deferential AEDPA standard," *Garrus v. Sec'y of Pa. Dep't of Corr.*, 694 F.3d 394, 400 (3d Cir. 2012), habeas relief may be granted only in two narrow circumstances, where the state court's adjudication of the petitioner's claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   In short, section 2254(d)(1) governs federal court review of the state court's legal conclusions whereas section 2254(d)(2) governs review of factual findings.

Regarding a state court's legal conclusions, a "decision involves an unreasonable application of clearly established federal law where the state court identifies the correct legal

principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Grant v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013) (quoting *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009)) (internal quotation marks and alterations omitted). A state court unreasonably applies clearly established federal law "if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result." *Brown v. Payton*, 544 U.S. 133, 141 (2005) (citations omitted); s*ee also Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). For § 2254(d)(1) purposes, "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal quotations omitted); s*ee also Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (same). Habeas relief should be granted only where the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

With respect to a state court's factual determinations, "[a] state court decision is based on an unreasonable determination of the facts only if the state court's factual findings are objectively unreasonable in light of the evidence presented in the state-court proceeding." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (quoting *Miller-El v. Cockrell*, 537 U.S. 322 (2003)) (internal quotation marks omitted). A federal court, sitting in habeas review, must presume that the state-court factual findings are correct. *Miller–El v. Dretke*, 545 U.S. 231, 240 (2005)) (quoting § 2254(e)(1)). To rebut the presumption that a state court's factual findings are correct, a petitioner must point to "clear and convincing evidence" that supports a contrary conclusion. *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012) (citing 28 U.S.C. §

2254(e)(1)).   Indeed, the state court's finding should not be disturbed where the "evidence in the state-court record can fairly be read to support the . . . court's factual determination."   *Wood v. Allen*, 558 U.S. 290, 302 (2010).

Finally, where a constitutional error is found, the petitioner must further demonstrate that the state court determination had a "substantial and injurious effect" on the conviction or sentence in order to obtain habeas relief.   *Fry v. Pliler*, 551 U.S. 112, 121 (2007), *cited in Garrus*, 694 F.3d at 412.

## III.  DISCUSSION

In his Petition here, Petitioner seeks to have this Court rule upon all the claims he raised—both *pro se* and with the assistance of counsel—on direct appeal, and in his PCR proceedings before the trial-level PCR court and at the Appellate Division.   As explained above, Petitioner challenged the effectiveness of his trial, appellate, and PCR counsel, and contended that he did not receive a fair trial.

In assessing Petitioner's claims here, the Court looks to the last reasoned state court decision on the merits.   *Simmons v. Beard*, 590 F.3d 223, 232 (3d Cir. 2009).   A determination as to which state court ruling is the last reasoned decision depends upon the issue raised.   As noted, Petitioner raised his claims in a piecemeal fashion before the state courts.   By way of example, some of his jury instruction challenges were raised only on direct appeal.   So, for those claims, the Appellate Division ruling on direct appeal is the last reasoned state court decision.   *See McBride v. Superintendent, SCI Houtzdale*, 687 F.3d 92, 101 (3d Cir. 2012) ("[A]n adjudication on the merits can occur at any level of state court.") (quoting *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009)) (internal quotation marks omitted).   Conversely, for

his ineffective assistance of counsel claims, those claims were addressed in the trial-level PCR court's written decision issued in 2008.[11]   Thus, the Court looks to that decision for its review of Petitioner's ineffectiveness of counsel challenges, save his challenges to his PCR counsel's performance that were raised for the first time in his PCR appeal.   The Court must look to the Appellate Division's PCR decision for that sole claim.   Finally, since the prosecutorial misconduct claims were addressed by the PCR court at the trial level, the Court looks to the trial court's written decision for those challenges.

Because the state court's legal conclusions constitute reasonable applications of United States Supreme Court law, and evidence in the state court record supports that court's factual findings, this Court will deny Petitioner's request for federal habeas relief.   In addressing Petitioner's claims, the Court groups them as follows:   jury instructions, identification, prosecutorial misconduct, sentencing, and ineffective assistance of counsel claims (including trial, appellate, and PCR counsel).

### A.     Jury Instructions

Petitioner argues that the trial court erred in failing to instruct the jury on the two lesser-included offenses of theft and aggravated assault, and for instructing the jury in such a manner to direct a verdict against him, *i.e.*, directing that he was "the actor."   The Court addresses the lesser-included claims first.

---

[11]     This Court looks to the PCR court, trial-level decision because the Appellate Division affirmed for substantially the same reasons expressed by that court, adding only a few additional comments.   *See Johnson v. Pinchak*, 392 F.3d 551, 557 (3d Cir. 2004) ("[W]hen the last state court decision simply affirms summarily the lower court's denial of relief, a federal court should look to the 'last *explained* state-court judgment on the . . . claim.'") (emphasis added) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 805 (1991)).

### 1.      Lesser-Included Offenses

The Appellate Division rejected the lesser-included claims on direct appeal.   The court explained that, under New Jersey law, the trial court's responsibility in "[d]etermining whether to charge the jury on a lesser-included offense depends largely on whether or not a charge was requested by defendant at trial."   *Walker*, 2006 WL 1418632, at *4 (citing *State v. Savage*, 799 A.2d 477, 491-92 (2002)). Where, as in Petitioner's case, defense counsel did not request the lesser-included offense charges, state law directs the trial court to instruct on the lesser offense "only when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense."   *Id.* (citing *State v. Jenkins*, 840 A.2d 242, 250-51 (2004)).

The court went on to assess the evidentiary record and concluded that the record did not "clearly indicate" that the theft and aggravated assault charges were appropriate.   *Id.* at *4. The Appellate Division reasoned, with respect to the theft charge:

> While Cobb's identification of defendant may have wavered, he never departed from his initial statement that one of his assailants was armed with a sawed-off shotgun, that he was threatened with immediate bodily harm, and that the other assailant removed his wallet and car keys. These facts provide no basis for a charge of theft as a lesser included offense.

*Id.* at *5.   Addressing the aggravated assault charge, the court explained that, under New Jersey law, aggravated assault is not always a lesser-included offense of robbery, "largely because the use of force required to sustain a robbery conviction is not necessarily equivalent to the use of force necessary to sustain an assault conviction."   *Id.*   In the court's view, because "Cobb's wallet was forcibly taken from him; there is no evidence to support the proposition that defendant committed an aggravated assault without a theft."   *Id.*

16

As is clear from this recounting of the Appellate Division's ruling, the court relied on New Jersey law in rendering its decision.   The United States Supreme Court and Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law; rather, the federal court's "task is to determine whether [a petitioner] 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Barkley v. Ortiz*, 209 F. App'x 120, 124 (3d Cir. 2006) (quoting 28 U.S.C. § 2254)*; see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to re-examine state court determinations on state-law questions.")   In other words, federal "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights."   *Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) (citing *Estelle*, 502 U.S. at 72-73).

In his direct appeal, Petitioner did not present his claim to the Appellate Division as one rooted in federal law.   He did not point to any United States Supreme Court decisional law, or even lower federal court decisions, in support of his claim.   *See* Pet. Br. on Direct Appeal at 12-19 (D.E. No. 22-6) (citing *State v. Perry*, 590 A.2d 624 (1991), and other New Jersey law, in support of theft argument); *id.* at 19-22 (citing neither state nor federal law in support of aggravated assault argument).   In *Baldwin v. Reese*, 541 U.S. 27 (2004), the Supreme Court held that a habeas petitioner did not "fairly present" a federal claim where the petitioner failed to explicitly state that the claim was federal and failed to cite federal law.   *Id.* at 32-33.   *Cf. Howell v. Mississippi*, 543 U.S. 440 (2005) (dismissal of writ of certiorari) (concluding that petitioner did not "properly present his claim [to a state court] as one arising under federal law" because "[i]n the relevant argument, he did not cite the Constitution or even any cases directly

17

construing it, much less any of [the Supreme] Court's cases").   Likewise, Petitioner in this action did not present his claim as a federal one.   In fact, the only reference to the Constitution in this section of Petitioner's brief is the mere title of the section, which states that "the trial court deprived the defendant of due process of law as guaranteed by the Fourteenth Amendment." Pet. Br. on Direct Appeal at 12 (D.E. No. 22-6).

Not surprisingly, the New Jersey Appellate Division did not analyze Petitioner's lesser-included-offense challenges under federal law.[12]   Accordingly, this Court may not pass on the Appellate Division's ruling, and may not grant habeas relief.   *Accord Barkley*, 209 F. App'x at 125 ("Here, the New Jersey Superior Court did not apply or analyze federal law because Barkley did not prompt it to do so. Therefore, Barkley's claim that the New Jersey Superior Court improperly ruled on his jury instruction argument cannot give rise to habeas relief.").[13]

Moreover, while Petitioner references the Due Process Clause of the Fourteenth Amendment in his papers to this Court, the Supreme Court has never held that the Due Process

---

[12]   The court's analysis relied solely on state law, and the only reference to federal law in the decision is in the restatement of the points asserted by the Petitioner.   For example, the court describes Point I as "The Trial Court deprived the Defendant of Due Process of Law as guaranteed by the Fourteenth Amendment to the United States Constitution and Art. 1 Par. 1 of the New Jersey Constitution by failing to instruct the Jury on pertinent Lesser-Included Offenses."   *Walker*, 2006 WL 1418632, at *3.   However, because Petitioner's brief did not cite any federal law in support of its decision, the Appellate Division did not analyze the claim as a federal one.

[13]   To the extent that Petitioner challenges the state court's factual findings that the trial evidence did not support charges on the theft and aggravated assault charges, his claim still fails. "[T]he factual determinations of state trial and appellate courts are presumed to be correct [and t]he petitioner bears the burden of rebutting the presumption by clear and convincing evidence." *Eley*, 712 F.3d at 846 (internal citation and quotation marks omitted).   Here, Petitioner has not pointed to clear and convincing evidence that contradicts the state court's findings.

Clause mandates lesser-included-offense instructions in non-capital cases like his.  *See Johnson v. Keith*, 726 F.3d 1134, 1135 n.2 (10th Cir. 2013) ("[N]either this court nor the Supreme Court has recognized a federal constitutional right to a lesser included instruction in non-capital cases."); *cf. Gilmore v. Taylor*, 508 U.S. 333, 342 (1993) ("Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error."). [14]   *Beck v. Alabama*, 447 U.S. 625 (1980) (requiring lesser-included-offense-instructions in capital cases).   Where the Supreme Court has not held that a particular jury instruction, or failure to give that instruction, is unconstitutional, there is no right to habeas relief.   *See Smith v. Spisak*, 558 U.S. 139 (2010) (declining to grant habeas relief based where jury instructions were not "previously held . . . unconstitutional").   Therefore, Petitioner's request for habeas relief on this ground is denied.   *Accord Carney v. Fabian*, 487 F.3d 1094, 1098 (8th Cir. 2007) ("Because [t]he Supreme Court has never held that due process requires the giving of lesser-included-offense instructions in noncapital cases, the trial court's refusal to give the heat-of-passion manslaughter instruction here cannot be contrary to clearly established federal law.") (internal citation and quotation marks omitted).

---

[14]    The Third Circuit, in *Vujosevic v. Rafferty*, stated that while the Supreme Court has held that instructions must be given for lesser-included-offenses only in capital cases, the circuit applies the Supreme Court's requirement to non-capital cases.   844 F.2d 1023, 1027 (3d Cir. 1988).   The Third Circuit and other courts have called *Vujosevic*'s conclusion into question. *See Geschwendt v. Ryan*, 967 F.2d 877, 884 n.13 (3d Cir. 1992); *Robertson v. Hanks*, 140 F.3d 707, 711 n.5 (7th Cir. 1998); *Peoples v. Cathel*, No. 05-5916, 2006 WL 3419787, at *7 (D.N.J. Nov. 21, 2006).   More importantly, for habeas review purposes, this Court may consider only Supreme Court law–not court of appeals precedent.   *See Marshall v. Rogers*, 133 S. Ct. 1446, 1450 (2013) (holding that courts may not use circuit precedent "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.")

## 2.      Prior Inconsistent Statements

Next, Petitioner argues that the trial court should have given a jury instruction on prior inconsistent statements, in light of Cobb's inconsistent identification accounts.    As noted above, at trial, Cobb testified that Petitioner's co-defendant Grady held the sawed-off shotgun during the robbery.    In his earlier statement to the police, Cobb stated that Petitioner, not Grady, held the gun.    In Petitioner's direct appeal to the Appellate Division, he argued that the trial court should have given a prior inconsistent statement instruction so that the jury was aware that it could rely on the prior police statement both to assess Cobb's credibility and as substantive evidence.

This claim was addressed, and rejected, by the Appellate Division.    As an initial matter, the court noted that, while the trial judge did not charge on prior inconsistent statements, the judge gave "extensive instructions regarding witness credibility and identification."   *Walker*, 2006 WL 1418632, at *6.    In these instructions, the trial judge expressly referenced Cobb's prior statement.    Among other things, the trial judge explained to the jury:

> The State has presented the testimony of Allen Cobb. You will recall that this witness identified the defendants in Court as the persons who committed the robbery.
>
> [The] State also presented testimony that *on a prior occasion, before this trial, this witness identified the defendants as the persons who committed these offenses.*
>
> According to the witnesses-according to the witness, his identification of the defendants was based upon the observations and perceptions that he made of the perpetrators at the time the offense was being committed.
>
> It's your function to determine whether the witness' identification of the defendants is reliable and believable, or whether it's based on a mistake, or for any reason not worthy of belief. You must decide whether it's sufficient reliable evidence upon which to conclude that these defendants are the persons who committed the offenses charged.

20

*Id.* at \*7 (emphasis added).    In addition, the Appellate Division found the trial judge's specific reference to "discrepancies or inconsistencies between identifications" a significant factor for the jury to consider.    *Id.*

The Appellate Division reasoned that the trial court's thorough credibility instruction – only a portion of which is recounted here–ensured that any failure to charge on prior inconsistent statements did not contribute to an unjust result.    According to the Appellate Division,

> [t]he central issue in this case was whether defendant was one of the men who robbed Cobb at gunpoint in the Pathmark parking lot. The victim's confusion at trial related to the central issue of identification. The extremely thorough instruction delivered by the court allowed the jury to focus on the victim's varying accounts.

*Id.* at \*8.

As with his lesser-included-offense challenges, Petitioner did not present a federal law challenge to the Appellate Division for its review but brought his challenge under state law. *See* Pet. Br. on Direct Appeal at 22-25 (D.E. No. 22-6) (citing only New Jersey law in support of argument).    Federal courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law."   *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997); s*ee also Estelle*, 502 U.S. at 67-68 (stating that federal courts do not "re-examine state court determinations on state-law questions").    Moreover, Petitioner has not pointed to any Supreme Court precedent that the state court unreasonably applied.    As noted, federal "habeas review of jury instructions is limited to those instances where the instructions violated a defendant's due process rights" under the United States Constitution. *Echols*, 492 F. App'x at 312 (citing *Estelle*, 502 U.S. at 72-73).    Accordingly, his request for

habeas relief on account of the trial judge's failure to instruct on prior inconsistent statements is denied.

### 3.      Directed Verdict – "Defendant the Actor"

Petitioner argued before the Appellate Division on direct appeal that the trial court erred in making the following instruction to the jury, which Petitioner views as directing them to find that he was the perpetrator or actor:

> Knowingly, with knowledge or equivalent terms have the same meaning.   A person acts knowingly with respect to his conduct if he's aware that his conduct is of that nature.   *You must determine whether a defendant was aware of the nature of his conduct in this case.*

*See* Pet. Br. on Direct Appeal at 26 (D.E. No. 22-6) (quoting Trial Tr. 114-21 to 115-1).   The Appellate Division summarily rejected this claim on direct appeal, stating that it was "without sufficient merit to warrant discussion in a written opinion."   *Walker*, 2006 WL 1418632, at *8 (citing N.J. Ct. R. 2:11-3(e)(2)).   The claim was not addressed on the merits by the trial-level PCR court or by the Appellate Division on PCR appeal.

Although the Appellate Division did not express the rationale for its decision, it is clear that this claim does not warrant habeas relief.   According to the United States Supreme Court, the paramount question on habeas review of a jury instruction is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."   *Estelle*, 502 U.S. at 73.   To show that a jury instruction so infected the trial, "a habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, *and* (2) that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable

doubt." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (emphasis added) (quoting *Waddington v. Sarausad*, 555 U.S. 179, 189 (2009)) (internal quotation marks omitted).

Habeas relief is inappropriate here because the trial court's jury charge did not take away the prosecution's obligation to prove beyond a reasonable doubt that Petitioner committed the charged offenses. Throughout the jury instructions, the trial judge stressed to the jurors the State's obligation to prove its case. *See generally* Trial Tr. 79-128 (D.E. No. 22-26). For example, when instructing the jury on the robbery count, the trial judge explained:

> A person is guilty of robbery if in the course of committing a theft, he knowingly inflicts bodily injury or uses force upon another, or threatens another with or purposely puts him in fear or immediate bodily injury.
>
> In order for you to find the defendant guilty of robbery, *the State is required to prove* each of the . . . elements [of robbery] beyond a reasonable doubt.
>
> *      *      *      *
>
> In [this connection], *the State must also prove* beyond a reasonable doubt [that] the defendants knowingly inflicted bodily injury or used force upon another.

*Id.* at 105:13-107:14 (emphasis added). Indeed, the trial judge methodically covered every element that the State had to prove in order to obtain Petitioner's robbery conviction. *See id.* at 105:3-113:3.

For the firearm conviction, the trial judge similarly, and repeatedly, told the jury that "the State must prove" all required elements in order for the jurors to return a guilty verdict. *See, e.g.*, *id.* at 113:12 ("In order for the State to convict the . . . defendant of [possession of a sawed off shotgun], the State must prove beyond a reasonable doubt these three elements:   One, there was a shotgun. Two, the defendants knowingly possessed the shotgun. And three, the

defendants did not have a valid Firearms Purchaser Identification Card."); *id.* at 114:10-12 ("The second element the State must prove beyond a reasonable doubt is that the defendants knowingly possessed a shotgun."); *id.* at 117:19-21 ("If you find the State has failed to prove any of these elements beyond a reasonable doubt your verdict must be not guilty.").

Accordingly, the Appellate Division's conclusion that the petitioner's challenge to the trial court's charge was without merit and comports with Supreme Court law.  As noted, to demonstrate a constitutional violation, the Petitioner must show that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."   *Williams*, 637 F.3d at 223. Because Petitioner has not shown such a reasonable likelihood here, the state court's conclusion cannot be an unreasonable application of Supreme Court precedent.   Habeas relief on this ground is denied.

### B.     Identification

Petitioner also argued before the Appellate Division, on direct appeal, that Cobb's identification testimony should have been suppressed as unreliable.   The Appellate Division summarily rejected this claim as without merit, and did not explain the basis for its ruling.   *See Walker*, 2006 WL 1418632, at *8.   In his Petition to this Court, Petitioner states as the factual predicate for his claim that Cobb originally identified him as brandishing the weapon but, at trial, identified Grady as the one who threatened him (Cobb) with the weapon.   *See* Pet. at 3 (D.E. No. 11).   To demonstrate that Cobb's identification testimony should be suppressed, Petitioner would have to show that "the identification process was unduly suggestive," and that "the totality of the circumstances" did not "render[ ] the identification reliable."   *Thomas v. Varner*, 428

F.3d 491, 503 (3d Cir. 2005) (citing *Neil v. Biggers*, 409 U.S. 188 (1972)).   When the trial

identification testimony follows a pretrial identification by photograph, the testimony "will be set

aside only if the photographic identification was so impermissibly suggestive as to give rise to a

very substantial likelihood of . . . misidentification." *Id.* (quoting *Simmons v. United States*,

390 U.S. 377, 384 (1968)).   Here, Petitioner has not even attempted to argue that the photo

array conducted by Detective Palardy was impermissibly suggestive.   Therefore, there is no

basis for this Court to conclude that the Appellate Division's decision was contrary to, or an

unreasonable application of, Supreme Court precedent.   For this reason, his request for habeas

relief on this basis is denied.

### C.    Prosecutorial Misconduct

The trial-level PCR court ruled on Petitioner's prosecutorial misconduct claim, noting

that prosecutorial misconduct may warrant reversal only where "the misconduct is so egregious

in the context of the trial as a whole as to deprive the defendant of a fair trial." *See Walker*

*Appellate PCR Decision*, No. A-0079-08T4, slip op. at 14 (quoting *State v. Wakefield*, 91 A.2d

954 (2007)).   Petitioner asserted that the prosecutor had allowed false testimony to be presented

at trial.   The court rejected Petitioner's factual contention that the prosecutor "knowingly

allowed false testimony and statements to be presented" as unsupported by the trial record. *Id.*

According to the PCR court,

> defense states that during the Wade hearing Detective Spero[15]
> inaccurately testified that he reviewed a teletype from the Orange
> Police Department at the start of his investigation.   Both the
> defense and the prosecution acknowledge that Detective Spero
> reviewed the teletype several days after the investigation
> commenced.   Counsel references lines 1T 16-13 to 14 of the
> transcript from the Wade hearing.   However, lines 13-14 clearly

---

[15]    Detective Spero was the detective who investigated the robbery.

25

> state that Detective Spero reviewed the tapes a few days earlier.
> Therefore, Petitioner's allegation is simply inaccurate.

*Id.*

The court also found Petitioner's second prosecutorial misconduct challenge unsupported by the record, "misleading[,] and verifiably inaccurate."   *Id.*   Specifically, the court discussed Petitioner's assertion that the prosecutor introduced an inflammatory narrative report by Detective Spero.   Rejecting this characterization, the trial-level PCR court noted that the narrative was "simply a factual recitation of the incident and investigative steps taken by the detective after the incident," and that there was nothing "offensive or provocative" about the report.   *Id.*

Finally, the trial-level PCR court addressed Petitioner's contention that the prosecutor allowed Detective Spero to lie when he (the detective) stated in the Wade hearing that Detective Palardy was not involved in the investigation.   According to Petitioner, Detective Palardy subsequently contradicted Detective Spero's testimony, admitting that he was involved in the investigation.   *Id.*   According to the court, it is clear from the context surrounding Detective Spero's statement that he was referring to the stage of investigation preceding Detective Palardy's participation in the photo array given to the victim, Cobb.   *Id.* (citing 1T 22-20 to 24; 23-1 to 9).   And, Detective Palardy's admission was only that he was involved in administering the photo arrays.   *Id.* (citing 3T 133-15 to 147-18).   "Therefore, [the trial-level PCR court reasoned], there is no inconsistency in the two detectives' accounts."   *Id.*

As is clear from the aforesaid discussion, the trial-level PCR court rejected the Petitioner's prosecutorial misconduct challenges on factual grounds, finding his challenges to be unsupported by the record.   The state court's factual findings are presumptively correct and, to

26

rebut this presumption, Petitioner must point to "clear and convincing evidence" that supports a contrary conclusion.   *Han Tak Lee*, 667 F.3d at 403.   Moreover, as long as "evidence in the state-court record can fairly be read to support the . . . court's factual determination[,]" the court's finding should not be disturbed.   *Wood*, 558 U.S. at 302.

In this case, Petitioner has not pointed to clear and convincing evidence that would suggest the court's factual determinations are erroneous.   Indeed, a review of the Wade hearing transcript reveals that there is record evidence that supports the court's factual determinations. Regarding Detective Spero's statements about the teletype, Petitioner asserts that the detective inaccurately stated that he reviewed the teletype at the start of his investigation.   However, as the court noted, it is clear from the Wade transcript that the detective clearly indicates he reviewed the teletype several days after the investigation started on January 12, 2003:

> Q.     And calling your attention to January 12th of the year 2003 . . . what position did you hold?
>
> A.     Detective.
>
> Q.     . . . did you become around that time involved in a case involving a robbery …. ?
>
> A.     Yes.
>
> *          *          *
>
> Q.     Okay.   And how did you become involved in this case?
>
> A.     I was called at home to respond to headquarters.
>
> Q.     Okay. What day of the week was it?
>
> A.     I believe it was Sunday.[16]

---

[16]     The Court takes judicial notice that January 12, 2003 was a Sunday.

* * *

> Q.    Was an identification made on that day, on January 12th?
>
> A.    No.
>
> Q.    Okay.   Where, what happened with your investigation regarding identification, Detective?   What occurred?
>
> A.    I was reviewing the teletypes *a few days later* and I read one from Orange Police Department.

Trial Tr. 13:15-16:14 (D.E. No. 22-23) (emphasis added).

As for Detective Spero's statements regarding Detective Palardy's involvement, Detective Spero clearly acknowledged during the Wade hearing that Detective Palary conducted the photo array.   In response to the question, "what were your instructions to Detective Polardi [sic] on January 22nd?" Detective Spero states "I told him there were two photo arrays to show Mr. Cobb, and I gave him six individual photos."   *Id.* at 23:7-23:11.   Thus, there is evidence in the record that fairly supports the court's factual finding regarding the Wade hearing testimony.

To the extent Petitioner challenges the court's legal conclusion, his claim fails on that basis as well.   "When analyzing a claim of prosecutorial misconduct, the key question is whether [the misconduct] 'so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process.'"   *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012) (quoting *Greer v. Miller*, 483 U.S. 756, 765 (1987)) (quotation marks and citation omitted). Pursuant to the Supreme Court's decision in *Napue v. Illinois*, a constitutional due process violation may exist where "the State, although not soliciting false evidence, allows it to go uncorrected when it appears."   360 U.S. 264, 269 (1959).   Under this standard, "[t]o establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor

28

knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony . . . ." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010), *cited with approval in Prosdocimo v. Sec'y, Pa. Dept. of Corr.*, 458 F. App'x 141, 147 n.5 (3d Cir. 2012).

In this case, even assuming that the PCR court's factual findings regarding the Wade transcript testimony were erroneous, the court's refusal to grant relief is not an unreasonable application of Supreme Court precedent because there is no indication that Detective Spero's testimony was perjurious.   The Third Circuit addressed this issue in *Prosdocimo*.   In that case, the circuit explained that some courts have interpreted *Napue* to apply only to the introduction of perjured testimony, and that, under such an interpretation, it would not apply to false testimony that was the "result of confusion, mistake, or faulty memory."   *Prosdocimo*, 458 F. App'x at 147 (quoting *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008)).   The circuit found that habeas relief was not warranted in that case, where it was impossible to discern from the state court record whether the disputed testimony was perjurious.   Likewise, here, Petitioner has not pointed to any evidence in the state court record that would suggest Detective Spero committed perjury as opposed to misspeaking out of confusion, mistake, or faulty memory.

Lastly, the Court briefly addresses Petitioner's contention that the prosecutor committed misconduct by not striking Detective Spero's report.   A copy of the report was not provided to this Court.   However, it is still clear that Petitioner's claim fails because he has not quoted from or pointed to specific language in the report that is inflammatory.   As noted, it is Petitioner's burden to point to clear and convincing evidence that undermines the state court's factual finding that the report was not offensive or provocative.   Accordingly, for the foregoing reasons, Petitioner's prosecutorial misconduct challenge fails.

29

### D.     Sentencing

Petitioner raised two sentencing challenges in his direct appeal:   (1) the trial court erroneously balanced the aggravating factors; and (2) the trial court should not have imposed an extended term under the No Early Release Act.[17]   The Appellate Division rejected both of these claims.

With respect to the trial court's balancing of the aggravating factors, the Appellate Division reasoned:

> We . . . discern no error in the identification and evaluation of the aggravating and, in this case, the non-existent mitigating factors. When sentenced, defendant had been convicted on four separate occasions of first degree robbery, at least one of which was committed while armed, and two prior second degree robberies. Defendant had been involved in the criminal justice system continuously since 1983.   In the face of this record, the imposition of the presumptive fifty-year term was unremarkable.

*Walker*, 2006 WL 1418632, at *9.

With regard to the NERA, the Appellate Division succinctly explained why Petitioner is subject to an extended term under that statute:

> . . . Under the Graves Act's repeat-offender provision, the trial judge is required to sentence a person convicted of a second Graves Act offense to both an extended term and a parole disqualifier. N.J.S.A. 2C:43-6c; 2C:44-3d. Defendant was convicted of armed robbery in 1991. In fact, defendant never contested his eligibility. He, therefore, qualified for the mandatory extended term.
>
> Having been convicted of armed robbery, a first degree offense, and subject to an extended term, defendant was subject to an extended term of imprisonment between twenty years and life,

---

17      In his Petition to this Court, Petitioner separately asserts that his sentence is excessive. However, his challenge to the trial court's balancing of the aggravating factors and to the extended term subsume this claim.   Indeed, the Appellate Division did not separately list a claim based on excessiveness.   *See Walker*, 2006 WL 1418632, at *4.

N.J.S.A. 2C:43-7a(2), and a presumptive term of fifty years. N.J.S.A. 2C:44-1f(1). He was also subject to a parole ineligibility term between one-third and one-half of the base term. N.J.S.A. 2C:43-7c. *Here, however, defendant was convicted of an offense, armed robbery, that is subject to NERA.* N.J.S.A. 2C:43-7.2. These terms carry a parole ineligibility term of 85% of the base extended term. *Ibid.* In other words, the fifty-year extended term, 85% of which must be served without parole, is entirely consistent with the law.

*Id.* at *8-9 (emphasis added).   In short, the appellate court ruled that Petitioner's extended term of imprisonment was consistent with state law.

In his Petition to this Court, Petitioner contends that the aggravating factor, which takes into account the need to protect the public, should have been submitted to a jury, and that the trial court's failure to submit this issue to the jury is unconstitutional.   *See* Pet. at 3 (D.E. No. 11).   He cites no law in support of this proposition, but seemingly relies on the principle established in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): all facts, other than the existence of a prior conviction, which extend a sentence beyond the statutory maximum for that sentence, must be submitted to a jury.[18]   To the extent Petitioner is making this argument, it is without merit.   As the Appellate Division noted, and Petitioner has not disputed, Petitioner had a prior conviction for armed robbery.   Under *Apprendi*, this fact did not need to be submitted to a jury. *See United States v. Blair*, 734 F.3d 218 (3d Cir. 2013).   Based on this prior conviction, the trial

---

[18]    The Court does not interpret the Petition as asserting a claim under *Alleyne v. United States*, 133 S. Ct. 2151 (2013), as the Petition was filed prior to that Supreme Court decision's issuance.   *Alleyne* held that facts which increase a mandatory minimum sentence must be submitted to a jury.   Even if the Petition was construed to assert an *Alleyne* claim, *Alleyne* may not be applied retroactively on habeas review.   *See Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013).   *Cf. Johnson v. United States*, No. 10-2984, 2013 WL 3990812, at *2 (D.N.J. Aug. 1, 2013) (holding that *Alleyne* did not apply retroactively on a motion to alter judgment); *United States v. Reyes*, No. 11-6234, 2013 WL 4042508, at *17-19 (E.D. Pa. Aug. 8, 2013) (explaining why, under Supreme Court and Third Circuit law, *Alleyne* is not a retroactive rule applicable to motions brought pursuant to 28 U.S.C. § 2255).

court was required to impose an extended term under state law.   *See* 33A N.J. Prac. § 40.15 (Extended Terms – Permissible Ranges).[19] Moreover, the statutory maximum for first degree robbery is life imprisonment, thus, Petitioner's sentence of fifty years does not exceed the statutory maximum.   *See* N.J.S.A. 2C:43-7(a)(2); 33A N.J. Prac. § 40.15 (Extended Terms – Permissible Ranges).   Finally, in convicting Petitioner of first degree robbery and third degree unlawful possession of a weapon (sawed-off shotgun), the jury found that Petitioner or his co-defendant utilized a weapon in the course of the robbery.[20]   Hence, to the extent Petitioner relies on *Apprendi*, his challenge fails.

Regarding Petitioner's NERA challenge, NERA expressly applies to armed robbery convictions, *see* N.J.S.A. 2C:43-7.2(d)(9), and Petitioner has not pointed to any constitutional violation occasioned by this state law.   To the extent he suggests that an extended term with limited opportunity for parole constitutes an Eighth Amendment violation for cruel and unusual punishment, courts consistently reject that argument.[21]   *See, e.g.*, *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the

---

[19]   "A mandatory extended term must be imposed if the person convicted is a repeat violent offender.   A person is denominated a 'repeat violent offender' and must be sentenced to an extended term of imprisonment if convicted of . . . a second degree robbery."

[20]   According to New Jersey law, a first degree robbery is one that, "in the course of committing the theft the actor . . . purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon."   N.J.S.A. 2C:15-1(a).

[21]   While a pre-2001 version of NERA has been held to have violated *Apprendi*, the version in effect when Petitioner committed his crime has not.   *See State v. Johnson*, 766 A.2d 1126, 1136-37 (2001) (explaining *Apprendi* issues with prior version of statute).

types and limits of punishments for crimes.") (citations omitted); *United States v. Walker*, 473 F.3d 71, 83 (3d Cir. 2007) (holding that 55-year mandatory sentence for armed robbery did not violate Eighth Amendment); *State v. Johnson*, 766 A.2d 1126, 1140-41 (2001) (holding that New Jersey's NERA statute does not constitute cruel and unusual punishment).   Finally, if Petitioner is challenging the state courts' application of state law, he may not do so on habeas review.   *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("[A] person who has been so convicted is eligible for, and the court may impose, whatever punishment is authorized by statute for his offense, so long as that penalty is not cruel and unusual, and so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment."). Accordingly, Petitioner's sentencing challenges fail and he is not entitled to habeas relief on those grounds.

### E.    Ineffective Assistance of Counsel

Finally, Petitioner argues that his trial, appellate, and PCR counsel were each ineffective in representing him.   The trial and appellate counsel challenges were heard by the trial-level PCR court, and affirmed on appeal by the Appellate Division for substantially the same reasons expressed by the trial court.   The PCR counsel challenge was addressed only the Appellate Division in its PCR review.

*Strickland v. Washington*, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims.   "The *Strickland* test has two prongs: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *Id.* at 687.   Under the first prong, the petitioner must demonstrate that counsel's errors were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

33

Amendment." *Id.*   Under the second prong, which is often referred to as the "prejudice" prong, the petitioner must demonstrate that the errors were "sufficiently serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Id.*   In this connection, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.   See also Palmer v. Hendricks,* 592 F.3d 386, 394 (3d Cir. 2010) (detailing the *Strickland* standard).   With this standard in mind, the Court addresses each of Petitioner's challenges in turn.

### 1.   Trial Counsel

Before the trial-level PCR court, Petitioner argued generally that that his trial counsel was ineffective during the pre-trial and trial stages of his proceeding.   Petitioner contended that trial counsel failed to thoroughly investigate Petitioner's case, and that he failed to meet with Petitioner, among other errors.   The bulk of Petitioner's challenges, however, focused on jury instruction issues:   failure to request a jury charge on the lesser-included offenses of theft, aggravated assault, and prior inconsistent statements; failure to object "to the trial court's instruction to the jury that directed the jury to find that the defendant was the actor . . . [;]"[22] and failure to either request an alibi instruction or object to the trial court's decision not to give that instruction.   Petitioner, further, argued that the accumulation of his trial counsel's errors denied him due process of law.

### a.   Failure during Pretrial Stage

The trial-level PCR court rejected Petitioner's contention that his trial counsel was ineffective during the pretrial stage of Petitioner's proceeding.   Specifically, the court disagreed that trial counsel failed to investigate exculpatory evidence, meet with Petitioner,

---

[22]   *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 4 ("POINT EIGHT").

timely provide Petitioner with discovery, or "subpoena the crime victim to the Wade hearing." *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 9.   In the court's view, the Petitioner did not support his arguments with adequate evidence or explanations.   Turning first to Petitioner's argument that trial counsel only met with him at the holding cell of the courthouse, the court noted that Petitioner "does not state how many meetings took place there, how long in duration the meetings lasted, and whether the attorney, and his client corresponded about the case through any other means.   All these facts would be important in determining whether trial counsel's representation was truly deficient."   *Id.*   Regarding Petitioner's argument that that trial counsel did investigate a surveillance photograph of an ATM where the victim's bank card was used, the court reasoned:

> The supporting brief does not offer more information about this photograph, including when it was taken.   Again, without these details and a fuller explanation, the court cannot make a fair determination about whether this evidence was in fact exculpatory or even relevant.   There could be any number of reasons trial counsel chose not to expend time and resources on investigating this one possible piece of evidence.   It is not the court's job to judge every strategic decision counsel makes.

*Id.*   Lastly, regarding the decision not to subpoena, the court reasoned that Petitioner did not "show why this decision was anything other than a strategic one."   *Id.*   The court concluded its analysis by holding that Petitioner had failed to satisfy either prong of *Strickland*–he neither showed that his counsel's performance fell below the standard of care, nor that he was prejudiced by his counsel's acts.   *See id.*

The trial-level PCR court's analysis of Petitioner's pretrial ineffective assistance claims comports with Supreme Court law.   As the court correctly noted, a habeas petitioner bears the burden of establishing that his counsel's performance was deficient and that he was prejudiced as

a result.   *See Breakiron v. Horn*, 642 F.3d 126, 137 (3d Cir. 2011).   Moreover, habeas courts are to presume that counsel rendered adequate assistance and that counsel reasonably exercised his or her professional judgment.   *See Strickland*, 466 U.S. at 690; *United States v. Mercado*, No. 12-2894, 2013 WL 4647258, at *3 (3d Cir. Aug. 30, 2013).   The Supreme Court recently reiterated these two points of law in its *Burt v. Titlow* decision:

> We have said that counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," and that the burden to "show that counsel's performance was deficient" rests squarely on the defendant.

No. 12-414, 2013 WL 5904117, at *6 (Nov. 5, 2013) (citations omitted).   And, as the trial-level PCR court noted, it is not the court's role to judge every strategic decision made by counsel.   As the Third Circuit has explained, reviewing courts "must resist the urge to second guess counsel's decision for 'it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'" *Mercado*, 2013 WL 4647258, at *3 (quoting *Strickland*, 466 U.S. at 689).   For these reasons, this Court finds no error in the state court's ruling and concludes that the state court reasonably applied Supreme Court precedent.   Habeas relief is denied on this ground.

### b.   Jury Instruction – Theft

On Petitioner's challenge to his trial counsel's decision not to request a jury instruction on the lesser-included offense of theft, the trial-level PCR court first noted that state law procedurally barred the claim because the Appellate Division already addressed it on direct appeal.   *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 9.   Nonetheless, the court addressed the merits of the claim, in the alternative.

36

The court concluded that the trial counsel's decision not to request a theft instruction was a strategic choice that was supported by the evidence presented at trial. Recall that the Appellate Division ruled on direct appeal that the trial judge did not err in failing to give a theft instruction because the facts did not support such a charge:

> While Cobb's identification of defendant may have wavered, he never departed from his initial statement that one of his assailants was armed with a sawed-off shotgun, that he was threatened with immediate bodily harm, and that the other assailant removed his wallet and car keys. These facts provide no basis for a charge of theft as a lesser included offense.

*Walker*, 2006 WL 1418632, at *5. Referring back to the Appellate Division's ruling, the trial-level PCR court reasoned that, assuming "the jury concluded that Petitioner was not the perpetrator holding the shotgun, as [Petitioner] argues could have happened, the other assailant still used force and threat of immediate harm in the commission of the crime. Even the defense's alternate version of facts support a charge for robbery, not theft." *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 10. Furthermore, the court noted, the defense's primary strategy was misidentification. [23] *Id.* Thus, it would have been incompatible for trial counsel to argue to the jury, on one hand, that Petitioner was not the assailant, while arguing on the other that Petitioner's conduct qualified for the lesser-included offense charge of theft. *Id.* ("Simultaneously arguing misidentification and requesting a charge for a lesser included offense does not make sense."). For these reasons, the court concluded that Petitioner failed to demonstrate that his counsel's performance fell below the standard of care. *Id.*

---

[23] The court quoted trial counsel's summation in support of its assessment of the defense's strategy. "The bottom line in this case is all the chips fall, one way or the other. Either you believe my client was one of the two people that committed this blatant robbery of a 70-60 year old man in the parking lot at Pathmark in the morning, Sunday morning, or you aren't sure." *Id.* (quoting 4T19-11 to 16).

As with the pretrial challenges, the trial-level PCR's counsel analysis comports with the *Strickland* standard.   The court's ruling essentially relied on the maxim that "[a] counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'"   *Shotts v. Wetzel*, 724 F.3d 364, 375 (3d Cir. 2013) (quoting *Strickland*, 466 U.S. at 690).   Moreover, the state court's factual finding that a trial counsel's decision was a strategic one is entitled to deference unless the petitioner points to clear and convincing evidence to the contrary–a task that Petitioner has not even attempted here.   *See McBride*, 687 F.3d at 107 ("[T]he PCRA Trial Court found that trial counsel 'made some strategic choices in furtherance of the defense theme,' a factual finding that we are bound to presume is correct because McBride has not rebutted it by clear and convincing evidence.") (citation omitted).   Accordingly, the state court's ruling was neither contrary to nor an unreasonable application of clearly established federal law, and habeas relief is denied on this ground.

### c.    Jury Instruction – Aggravated Assault

Habeas relief is not warranted on Petitioner's aggravated assault jury instruction challenge for similar reasons.   As with the theft instruction, the trial-level PCR court concluded trial counsel made the strategic decision not to seek an aggravated assault instruction.   After noting that the claim was procedurally barred under state law, the court explained:

> The argument [Petitioner] presents on this point makes little logical sense.   [His] brief suggests that the jury could have concluded that the defendant was in fact the assailant holding the firearm, but that he did not share the same criminal intent to steal from the victim as his accomplice did.   [However, i]t is not plausible that the defendant would hold and continue to hold a shot gun pointed toward the crime victim as his accomplice demanded money without harboring the intent to commit larceny.

*Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 11.   Moreover, the court relied on the Appellate Division's ruling on direct appeal, which reasoned that "[t]he record clearly indicates that Cobb's wallet was forcibly taken from him; there is no evidence to support the proposition that defendant committed an aggravated assault without a theft." *Id.* (quoting *Walker*, 2006 WL 1418632, at *5).   Based on these considerations, the court concluded that "[t]here was no reasonable basis for trial counsel to ask for an aggravated assault instruction."   *Id.*   And, as with counsel's strategic choice not to seek the theft instruction, the court noted that requesting this lesser-included offense "would have been incompatible with the defense's overall theory of the case."   *Id.*

In rejecting Petitioner's aggravated assault challenge, the trial-level PCR court did not contravene or unreasonably apply Supreme Court law.   As noted above, *Strickland* affords counsel great strategic latitude, and the state court thoroughly explained why it would not have made strategic sense for trial counsel to seek an aggravated assault instruction.   Further, the state court's factual finding that trial counsel's decision was strategic in nature is entitled to deference as it is unchallenged here.   Therefore, in light of AEDPA's highly deferential standard of review, habeas relief will be denied on this ground.

### d.    Jury Instruction – Prior Inconsistent Statements

Like his theft and aggravated assault challenges, Petitioner argues that his trial counsel erred in failing to request another jury charge:   prior inconsistent statements.   Once again noting that this claim was procedurally barred under state law, the trial-level PCR court nonetheless addressed the merits of this claim.   Recall that, in addressing on direct appeal whether the trial court's failure to instruct was erroneous, the Appellate Division noted that the

trial judge gave "extensive instructions regarding witness credibility and identification." *Walker*, 2006 WL 1418632, at *6.   With this background in mind, the trial-level PCR court focused its analysis on prejudice:

> [E]ven if counsel's failure to request the jury instruction on the law of inconsistent statements was an unreasonable error, . . . the lack of instruction did not prejudice the defendant.   The instruction provided was more than adequate to guide the jury in evaluating the victim's statements and credibility.   For those reasons, [Petitioner] does not and cannot establish that but for the attorney's failure to request the instruction on the law of inconsistent statements, the result of the proceeding would have been different.

*Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 11-12.[24]

The trial-level PCR court's ruling comports with federal law.   "[T]o prevail on an ineffective assistance of counsel claim, a petitioner must establish prejudice by showing a reasonable probability that, but for attorney error, the outcome of the proceeding would have been different."   *Bond v. Beard*, 539 F.3d 256, 278 (3d Cir. 2008) (citing *Albrecht v. Horn*, 485 F.3d 103, 128 (3d Cir. 2007)).   Here, Petitioner has not shown that, had his counsel requested the instruction, he would have been successful on direct appeal if the trial court denied counsel's request.   Indeed, the Appellate Division reached the contrary conclusion in his direct appeal, reasoning that the trial judge's thorough instructions on credibility squarely placed Cobb's prior inconsistent statements before the jury, and that lack of a prior inconsistent statement instruction did not undermine the fairness of Petitioner's trial.   *Walker*, 2006 WL 1418632, at *6-8. Accordingly, the trial-level PCR court reasonably applied federal law in concluding that

---

[24]        In affirming the trial PCR court's ruling, the Appellate Division affirmed substantially for the reasons stated by that court.   Underscoring its agreement with the court, the Appellate Division added:   "even if a more detailed charge should have been sought, Walker has not demonstrated a reasonable likelihood that the result would have been different had it been requested."   *See Walker Appellate PCR Decision*, No. A-0079-08T4, slip op. at 11.

Petitioner cannot demonstrate that he was prejudiced by his counsel's failure to request the prior inconsistent statement jury charge.    Habeas relief, on this ground, is denied.

### e.    Jury Instruction – "Defendant the Actor"

In this challenge, Petitioner argues that his counsel was ineffective for failing to challenge the following trial court's instruction.

> Knowingly, with knowledge or equivalent terms have the same meaning.   A person acts knowingly with respect to his conduct if he's aware that his conduct is of that nature.   *You must determine whether a defendant was aware of the nature of his conduct in this case.*

*See* Pet. Br. on Direct Appeal at 26 (D.E. No. 22-6) (quoting Trial Tr. 114-21 to 115-1). Petitioner interprets this instruction as directing the jury to find that he was the perpetrator.

The trial-level PCR court rejected this claim on prejudice grounds, after it noted that the claim was procedurally defaulted under state law.   The court reasoned that the Appellate Division did not find the jury instruction invalid on direct appeal, thus, Petitioner could not establish prejudice under *Strickland*.   *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 12.   As with Petitioner's other jury instruction challenges, there is no constitutional error here. Earlier in this opinion, the Court concluded in its review of the substantive jury instruction challenge that Petitioner has not shown that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."   *Williams*, 637 F.3d at 223.   Accordingly, the Petitioner has not demonstrated that he was harmed by inclusion of the instruction.   Nor has he shown that he would have obtained a different result on direct appeal had his counsel objected and the trial court overruled that objection.   Because the Appellate Division has already found the

instruction harmless, and this Court likewise finds no constitutional error with the instruction, Petitioner cannot demonstrate prejudice under *Strickland*, and he is not entitled to habeas relief.

### f.        Jury Instruction – Alibi

On this jury instruction challenge, Petitioner contends that his trial counsel erred by failing to request an alibi instruction.   In addressing Petitioner's challenge, the trial-level PCR court exhaustively detailed the pertinent facts.   *See Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 12.   The court explained that Petitioner argued that his counsel should have requested the instruction on account of Crystal Braxton's (his former girlfriend) testimony. According to the court, Braxton had given a handwritten statement to police in which she stated that she had seen Petitioner at 11 am on the day of the robbery, and then again at 6 pm that day. *Id.*   She stated at trial, however, that she had lied in that handwritten statement, and that Petitioner was home with her from 8 am on the morning of the robbery.   *Id.* at 13.

In light of her inconsistent testimony, and given that her credibility was already suspect due to her romantic relationship with defendant, the trial-level PCR court concluded that Braxton "was not a solid alibi."   *Id.* at 12.   More to the point, the court found that trial counsel's decision not to request an alibi instruction was "a carefully considered strategic decision, which courts generally consider unchallengeable."   *Id.* (citing *Strickland*, 466 U.S. at 690).   The court further reasoned that Petitioner had not demonstrated prejudice, stating that "Petitioner does not prove that but for counsel's failure to request the alibi instruction, the result of the proceeding would have been different."   *Id.* at 13.   According to the court, the fact that the trial judge did not give an alibi instruction did not prevent the jury from considering Braxton's testimony.   *Id.*

Petitioner has not pointed to clear and convincing evidence that would call into question the state court's factual finding that Braxton was a poor alibi, or that trial counsel's decision was a strategic one.   *Id.* at 12.   Indeed, the state court's latter conclusion is consistent with the Third Circuit's ruling in *Echols*, which applied *Strickland* to a counsel's alleged failure to pursue an alibi defense:

> Echols's argument suggests that, in the absence of the alibi theory, there was an aimless defense. That is not the case. Trial counsel argued—from opening through summation—that Echols was not the assailant . . . . That tactical choice is precisely the sort of decision which *Strickland* precludes us from second guessing.

492 F. App'x at 311.   Moreover, in this case, Petitioner has not even attempted to show that, had his counsel requested an alibi instruction, the result of his proceeding would have been different.   Thus, the state court reasonably applied *Strickland* to conclude that Petitioner failed to satisfy both the performance and prejudice prongs.   Accordingly, there is no basis for this Court to grant habeas relief.

### g.    Conflict of Interest

Petitioner argued to the Appellate Division on direct appeal that he was deprived of his Sixth Amendment right to counsel on account of a conflict of interest between himself and trial counsel.   In his Petition to this Court, he bases the claim on the fact that he filed a grievance against trial counsel, prior to the start of trial, based on his counsel's alleged failure to provide him with pretrial discovery.   *See* Pet. at 2 (D.E. No. 11).   The Appellate Division summarily rejected this claim on direct appeal, noting that it was "without sufficient merit to warrant discussion in a written opinion."   *Walker*, 2006 WL 1418632, at *8.

43

Although the appellate court did not explain the basis for its ruling, Petitioner has not shown that he is entitled to habeas relief.   The Sixth Amendment right to counsel includes "a correlative right to representation that is free from conflicts of interest."   *Wood v. Georgia*, 450 U.S. 261, 271 (1981).   To demonstrate that this right was violated, Petitioner must show that the conflict existed and that he was adversely affected by his counsel's representation.   *Mickens v. Taylor*, 535 U.S. 162, 170-71 (2002); *United States v. Fawkes*, 501 F. App'x 183, 187 (3d Cir. 2013) (citing same).   For reasons explained in more detail herein, Petitioner has not demonstrated that this counsel was ineffective, or that he received an unfair trial; thus, he cannot show that he was adversely affected by his counsel's representation in any way.   Accordingly, his request for habeas relief on this ground is denied.   *Accord Royal v. Balicki*, No. 07-5234, 2009 WL 137335, at *16-18 (D.N.J. Jan. 20, 2009) (denying habeas relief where petitioner argued that "trial counsel did not properly represent him after he filed an ethics complaint against counsel").

### h.    Accumulation of Errors

Finally, Petitioner argues that the accumulations of errors by his trial counsel violated his Sixth Amendment right to counsel.   As this Court has rejected each of Petitioner's specific challenges, his accumulation claim necessarily fails.

### 2.    Appellate Counsel

Turning to appellate counsel's performance, Petitioner contends that his counsel on direct appeal was ineffective.   In Petitioner's view, his counsel erred in failing to challenge his trial counsel's decision not to request an alibi instruction.   In rejecting this claim as without merit, the trial-level PCR court applied *Strickland* and *Jones v. Barnes*, 463 U.S. 745 (1983).   The

court reasoned that, while a defendant is entitled to counsel on appeal, counsel "does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant."   *Walker Trial PCR Decision*, No. 02-04-1194, slip op. at 13 (quoting *Jones*, 463 U.S. at 751).   In considering the weaknesses of the alibi defense, the court found that appellate counsel winnowed out that weak claim and focused, instead, on the eyewitness and identification procedure.   *Id.*   The court concluded that appellate "counsel's decision not to raise the alibi claim on appeal was a matter of appellate strategy."   *Id.*   Moreover, the court held that Petitioner did not demonstrate prejudice because he did not show why the Appellate Division "would have reversed and ordered a new trial based on the lack of an alibi instruction."   *Id.*

As an initial matter, the state court properly recognized that *Strickland* governs ineffective assistance claims brought against appellate counsel.   *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).   To prevail on an ineffective assistance claim against appellate counsel, a petitioner

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.     If [the petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice.     That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief [on the challenged issue], he would have prevailed on his appeal.

*Id.* at 285-86.   Moreover, as the state court also correctly noted, appellate counsel is not obligated to raise *every* nonfrivolous claim on appeal.   *See United States v. Turner*, 677 F.3d 570 (3d Cir. 2012) (stating that the Supreme Court has not held that "the indigent defendant has a constitutional right to compel appointed counsel to press [even] nonfrivolous points requested by

the client, if counsel, as a matter of professional judgment, decides not to present those points." (quoting *Jones*, 463 U.S. at 751)).

Before this Court, Petitioner has not pointed to clear and convincing evidence that would undermine the state court's factual finding that appellate counsel's decision was strategic and within the bounds of "reasonable professional judgment."   *Strickland*, 466 U.S. at 690.   Nor has Petitioner explained how he was prejudiced by appellate counsel's decision not to pursue the alibi issue.   Indeed, as the Appellate Division found no error with the lack of alibi instruction on direct appeal, and this Court finds that habeas relief was not warranted on Petitioner's alibi-related claims, Petitioner could not demonstrate prejudice.   Accordingly, the state court's *Strickland* application was reasonable, and habeas relief is not warranted on this claim.

### 3.      PCR Counsel

Finally, Petitioner argues that his counsel before the trial-level PCR court was ineffective. However, under 28 U.S.C. § 2254(i), "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."   Accordingly, Petitioner's request for relief on this ground is denied.   *Accord Taylor v. Horn*, 504 F.3d 416, 437 (3d Cir. 2007).

Because each of Petitioner's grounds for relief is denied, his application for the appointment of pro bono counsel will be denied as moot.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to AEDPA, an appeal may not be taken to the Court of Appeals from a district court's order entered in a § 2254 proceeding unless a judge issues a certificate of appealability. Such a certificate is issued where "the applicant has made a substantial showing of the denial of

a constitutional right." 28 U.S.C. § 2253(c)(2); s*ee also* 28 U.S.C. § 2255(d); *Gonzalez v. Thayer*, 132 S. Ct. 641, 648 (2012). In this case, the Court denies a certificate of appealability because jurists of reason would not find it debatable that Petitioner has failed to make a substantial showing of the denial of a constitutional right.

## V.   CONCLUSION

For the foregoing reasons, Petitioner's habeas petition is DENIED. An appropriate Order accompanies this Opinion.

*s/Esther Salas*_____
Esther Salas, U.S.D.J.